UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS A. GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,<br><br>    Defendants. | Case No.: 1:14-cv-00459-BAM (PC)<br><br>SCREENING ORDER REQUIRING PLAINTIFF TO EITHER FILE THIRD AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ON COGNIZABLE CLAIMS<br><br>(ECF No. 15)<br><br>THIRTY-DAY DEADLINE |

**I.     Screening Requirement and Standard**

Plaintiff Jesus A. Garcia ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  On October 14, 2014, the Court dismissed Plaintiff's complaint with leave to amend.  (ECF No. 6.)  Plaintiff then filed a first amended complaint on December 3, 2014, (ECF No. 9), which was also dismissed with leave to amend on February 13, 2015, (ECF No. 11).  Currently before the Court for screening is Plaintiff's second amended complaint, filed on May 7, 2015.  (ECF No. 15.)

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

1

malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently housed at Valley State Prison. Plaintiff names the following defendants: (1) Matthew Cate, former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); (2) J. Mejia, Classification Staff Representative ("CSR"); (3) J. Faure, Correctional Counselor; (4) Ron Davis, Warden at Avenal State Prison ("ASP"); (5) Jeffrey Beard, Secretary of the CDCR; and (6) an unnamed Chief Medical Officer at ASP.

Plaintiff alleges as follows: In 2009, Plaintiff was sentenced to serve time in the CDCR, which he contends was obligated to provide for his safety and well-being. At intake, he was given a medical check-up and found to have asthma. Plaintiff did not have Cocciodiodimycosis ("Valley Fever") at the time of his check-up.

Later, Plaintiff saw Defendant Faure, who was assigned to his case. Defendant Faure's job was to review Plaintiff's central file ("C-File"), including his enemy concerns, disciplinary records, close to home hardships, security level assignments, personal history, and medical files. In evaluating Plaintiff for transfer to another institution, Defendant Faure was to review the complete C-File. Defendant Faure was also privy to private memoranda distributed to counselors regarding placement concerns.

In 2009, a memorandum had already been distributed regarding the concerns of Valley Fever and the elevated risk of contracting it at both Pleasant Valley State Prison ("PVSP") and ASP. This memorandum and many others stated that there should be no more construction because of the risk of raising more Valley Fever. Defendant Faure had this information at his disposal when he placed Plaintiff, who has an immune-compromised system and is at risk of contracting Valley Fever, which he later did.

Defendant Mejia was employed by CDCR to review all endorsements placed by counselors for transfer to other institutions, and was obligated to review Plaintiff's C-File before sending him to another institution. Defendant Mejia was further obligated to review Plaintiff's medical file, at which time he would have become apprised of Plaintiff's asthma and that he would have been disqualified from being sent to either ASP or PSVP. Also, Defendant Mejia was privy to memoranda distributed throughout CDCR, including one about the risks of contracting Valley Fever, including that having asthma or "COPD," or being of African-American or Asian descent, puts a person at higher risk of contracting Valley Fever. Defendant Mejia knew the substantial risks of harm to Plaintiff and yet "risked his life." (ECF No. 15, p. 5.)

Plaintiff contends that Defendant Cate, as former CDCR Secretary from 2008 to 2012, was responsible for the operations of the California state prisons, Plaintiff's health and welfare, and the prison population as a whole. Defendant Cate became apprised of the risk of Valley Fever at PSVP and ASP through memoranda sent to him through his Chief Medical Officers at various institutions, but he "knowingly chose to ignore this fact. . . ." (ECF No. 15, p. 5.) Recently, a federal judge ordered that certain classes of prisoners could not be housed at PSVP and ASP.

3

1    Plaintiff further alleges that Defendant Jeffry Beard is the current Secretary of CDCR, was
2 responsible for the health and welfare of Plaintiff and "the prison population as a whole," and "has
3 known of the risk of harm" to him. (ECF No. 15, p. 5.) Plaintiff also contends that Defendant Beard
4 is responsible for ensuring that all prisoners' in his custody and parolees' health and welfare are
5 secured. Defendant Beard recently ordered, as instructed by a federal judge, that certain classes of
6 inmates begin being moved out of PVSP and ASP, to ensure that certain people did not contract
7 Valley Fever.
8    Plaintiff asserts that he arrived at ASP unaware that his life was endangered by Valley Fever,
9 which is endemic to the region. He also alleges that Defendant Davis, the Warden at ASP, was
10 responsible for the operation of ASP and the health and welfare of Plaintiff and the rest of the ASP
11 population. Defendant Davis was also privy to the memoranda issued by his Chief Medical Officers,
12 the Center for Disease Control, and any other entity that wrote a report regarding safety and welfare
13 concerns. Defendant Davis had full knowledge that Valley Fever was endemic to the region, yet he
14 allowed Plaintiff to be transferred to ASP. Defendant Davis had a duty to ensure that no one with a
15 weakened immune system was allowed entry into ASP, and should have requested that a CSR redirect
16 Plaintiff to another prison.
17    The Chief Medical Officer had a memorandum which spoke about Valley Fever, and Plaintiff
18 alleges it was his duty to ensure that the doctors were aware of the risk of contracting Valley Fever,
19 and that an inmate was immediately tested when symptoms arose. Plaintiff further contends it was the
20 Chief Medical Officer's duty to ensure that no African American or Asian American inmate, or inmate
21 with a compromised immune system, remain at ASP. Plaintiff presented symptoms of Valley Fever
22 and yet remained at ASP and was left without treatment. Plaintiff alleges it was the Chief Medical
23 Officer's job to inform Defendant Davis that an inmate with asthma had arrived at ASP who was at a
24 higher risk of contracting Valley Fever, and to ensure that he received treatment that was adequate for
25 his ailment. Plaintiff contends that in all aspects of this the Chief Medical Officer failed, putting him
26 in danger of dying without the proper treatment.
27    Plaintiff also alleges he contracted Valley Fever while in the care of CDCR. Plaintiff became
28 very sick, with fever, chills, body aches and headaches, which are all symptoms of Valley Fever. The

4

symptoms continued to worsen but the doctors said it was a common cold. He was paroled on January 5, 2012 without having been tested for Valley Fever. Plaintiff asked to be provided medical service upon paroling to the streets as he has no medical coverage, but no response was forthcoming. Plaintiff alleges that UC Davis Medical Center tests and specializes in Valley Fever, and recommends that a patient evaluated as having contracted Valley Fever should be evaluated for at least nine years to make sure that the Valley Fever spore is not traveling through the body and later reactivates. Such medical treatment has not been offered by CDCR, leaving the expense of such tests in the hands of Plaintiff.

Once paroled, Plaintiff became very sick, with chills, fever, body aches, and headaches. He sought treatment at a clinic where a physician ordered chest x-rays. The physician, who was unaware that Plaintiff had been at ASP, stated that he presented with bronchitis and pneumonia. Plaintiff contends that pneumonia is also a complication of having Valley Fever. Plaintiff informed the physician that he had asthma and that he had been paroled from ASP two weeks earlier. The physician gave Plaintiff a shot and a prescription, which was not for Valley Fever.

About twelve months after being out of prison, Plaintiff began to break out with small spots around his ankles and top of his feet. Eighteen months after having been released, Plaintiff was once again incarcerated. While in county jail, Plaintiff's rash worsened and he broke out in bumps, which he contends is also a condition associated with Valley Fever. He was given creams for his condition, which continued to worsen, and his shins became swollen and his feet began to peel.

Plaintiff asked to be tested for Valley Fever. Without being told the results, Plaintiff was prescribed Diflucanate and antibiotics. Upon his second refill, Plaintiff asked the nurse what he was being prescribed Diflucanate for and for its side effects. The nurse came back with Valley Fever written on Plaintiff's medication bag. Plaintiff asked if he had Valley Fever, but the nurse told him to ask his doctor. Plaintiff asked the doctor, who verified that he had Valley Fever. Plaintiff took Diflucanate for nine months, which caused constipation and, Plaintiff contends, had a high probability of destroying his liver. He also suffered dehydration, blurred vision, headaches, dizziness, disorientation, muscle weakness, fatigue, anxiety, stress, and weight loss.

The CDCR recently had all inmates across California tested for Valley Fever. If they tested negative, then they could not be transferred to ASP or PVSP for fear of contracting it. If an inmate

5

tested positive, then they could be transferred because they allegedly built up an immune system that does not allow them to contract it again. African-Americans, Asian-Americans, and those with weakened immune systems who were or are currently housed at ASP or PVSP were given an emergency Unit Classification Committee action and put up for transfer to an institution where Valley Fever is not prevalent. Memoranda are in possession of the CDCR which informed them along ago to the risks associated with housing inmates at PSVP and ASP, and yet they failed to heed the warnings.

Plaintiff seeks compensatory, punitive and exemplary damages, interest, costs and attorney's fees.

### III.     Discussion

#### A.     Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to link Defendant Cate to any constitutional violation. As this is an additional defendant added since his last amended complaint, in an abundance of caution Plaintiff will be given leave to cure this deficiency. If Plaintiff elects to amend his complaint, he must allege what each individual defendant did or did not do that resulted in a violation of his rights.

///

///

**B.    Doe Defendants**

Plaintiff sues an unnamed "Chief Medical Officer" at ASP as a defendant. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until he has identified them as actual individuals and amended his complaint to substitute a name for the unnamed Chief Medical Officer.

**C.    Supervisory Liability**

To the extent Plaintiff seeks to bring suit against Defendant Cate, Davis and Beard based on their roles as supervisors, he may not do so. Supervisory personnel may not be held liable under section 1983 for the actions of subordinate employees based on respondeat superior or vicarious liability. Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013); accord Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074–75 (9th Cir. 2013); Lacey v. Maricopa County, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley, 734 F.3d at 977 (citing Snow v. McDaniel, 681 F.3d 978, 989 (9th Cir. 2012)) (internal quotation marks omitted); accord Lemire, 726 F.3d at 1074–75; Lacey, 693 F.3d at 915–16. "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." Crowley, 734 F.3d at 977 (citing Hansen v. Black, 885 F.2d 642, 646 (9th Cir.1989)) (internal quotation marks omitted).

As noted above with respect to Defendant Cate and discussed further below with respect to Defendants Davis and Beard, Plaintiff has not alleged that those defendants were personally involved in the constitutional deprivation of his rights. Nor has he alleged that they instituted deficient policies. Plaintiff will be given one more final chance to cure this deficiency.

**D.    Deliberate Indifference/Cruel and Unusual Punishment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452

U.S. 337, 347 (1981).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the "minimal civilized measure of life's necessities," and (2) "the prison official 'acted with deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard [ ] that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Defendant Ron Davis:

Plaintiff has not stated a cognizable claim against Defendant Davis for deliberate indifference to Plaintiff's health and safety.  There are no allegations indicating that Defendant Davis knew that Plaintiff had asthma or was otherwise at risk to contract Valley Fever.  There are also no allegations that Defendant Davis was personally involved in Plaintiff's transfer to ASP.  As noted above, Plaintiff will be given one more chance to cure this deficiency.

Defendant Jeffrey Beard:

Plaintiff also fails to state a cognizable claim against Defendant Beard for deliberate indifference to his health and safety.  Although Plaintiff generally alleges that Defendant Beard "has known of the risk of harm" to him, he alleges no facts regarding what this knowledge entails.  Nor are there any allegations linking Defendant Beard to Plaintiff's housing assignment at ASP, or otherwise connecting him to Plaintiff's alleged contraction of Valley Fever at ASP.  As noted above, Plaintiff will be given one more chance to cure this deficiency.

Defendants J. Mejia and J. Faure:

At the pleading stage, Plaintiff has stated a cognizable claim against Defendants J. Mejia and J. Faure for deliberate indifference to his health and safety.

**E.     Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir .2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251

(1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

Deliberate indifference is shown where the official is aware of a serious medical need and fails to adequately respond. Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1018 (9th Cir. 2010). "Deliberate indifference is a high legal standard." Id. at 1019; Toguchi, 391 F.3d at 1060. The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must make the inference. Farmer, 511 U.S. at 837.

Plaintiff fails to state a claim against the unnamed Chief Medical Officer for deliberate indifference to his serious medical needs. Plaintiff alleges that the Chief Medical Officer had several duties related to his health and medical needs, but makes no allegations that the Chief Medical Officer knew about his medical condition or symptoms of Valley Fever.

Also, although Plaintiff generally complains of inadequate medical care from various medical staff, he does not provide sufficient factual allegations to state a cognizable claim for deliberate indifference to serious medical needs that is directed towards any individual defendant. As stated above, in an abundance of caution Plaintiff will be given one more chance to cure this deficiency.

### IV. Conclusion and Order

Plaintiff has stated a cognizable claim for deliberate indifference to his health and safety in violation of the Eighth Amendment against Defendants J. Mejia and J. Faure, but has failed to state any other cognizable claims. The Court will grant Plaintiff one more opportunity to cure the identified deficiencies which Plaintiff believes, in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the cognizable Eighth Amendment claims identified by the Court, he may file a notice informing

9

1  the Court that he does not intend to amend and he is willing to proceed only on his cognizable claims.
2  The remaining defendants and claims will then be dismissed, and the Court will provide Plaintiff with
3  the requisite forms to complete and return so that service of process may be initiated.
4      If Plaintiff chooses to file a third amended complaint, the amended complaint should be brief,
5  Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of
6  Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49.  Although accepted as
7  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. .
8  . ." Twombly, 550 U.S. at 555 (citations omitted).
9      Finally, Plaintiff is advised that an amended complaint supersedes the original complaint.
10 Lacey, 693 F.3d at 927. Therefore, Plaintiff's amended complaint must be "complete in itself without
11 reference to the prior or superseded pleading."  Local Rule 220.
12     Based on the foregoing, it is HEREBY ORDERED that:
13     1.    The Clerk's Office shall send Plaintiff a complaint form;
14     2.    Within thirty (30) days from the date of service of this order, Plaintiff must either:
15         a.    File a third amended complaint curing the deficiencies identified by the Court in
16             this order, or
17         b.    Notify the Court in writing that he does not wish to file a third amended
18             complaint and he is willing to proceed only on the cognizable Eighth
19             Amendment claims for deliberate indifference to his health and safety against
20             Defendants J. Mejia and J. Faure; and
21     3.    <u>If Plaintiff fails to comply with this order, this action will be dismissed, without
22         prejudice, for failure to obey a court order</u>.
23
24 IT IS SO ORDERED.
25     Dated:   **August 31, 2015**              /s/ *Barbara A. McAuliffe*
26                                                                             UNITED STATES MAGISTRATE JUDGE
27
28